*In re* ESTATE OF SARAH T. MICHENER, DECD.

"And at the marriage or death of my said sister, whichever may first happen, I order and direct my executors to divide all the residue of my estate equally among my neices and nephews, children of R. William and Jesse T. (my brothers), share and share alike." *Held,* to be a vested legacy in the children of the brothers, and a distribution of the shares of those deceased to their legal representatives was proper.

When a testator designates the objects of his bequest or devise by their relationship to a living ancestor, such devisees or legatees take equal shares *per capita.* Risk's Appeal, 2 P. F. S. 271.

Sur exceptions to report of Auditor.

Opinion of the court delivered by

Ross, P. J. The testatrix died March 10th, 1861, leaving a will dated January 1, 1861, which was duly probated. After the bequest of certain legacies, she directed as follows:

"5. All the rest of my estate of whatever kind, I direct my hereinafter named executors to sell at public sale or otherwise, as soon as conveniently can be after my decease, and the proceeds thereof and all the residue of my estate to be collected and invested in good and sufficient real estate security to insure the safety thereof, and to collect the interest arising from said fund, and pay the same into the hands of my said sister Rebecca Roberts, as long as she remains Morris Roberts' widow, for her sole and separate use, and if the interest should not be sufficient for her comfortable maintenance, then to use of the principal as much as may, in the judgment of my said executors, seem reasonable: Provided, nevertheless, that in case my said sister Rebecca Roberts shall at any time be or become in possession of any money or estate of her own, independent of my estate, then it is my will that my executors appropriate no part of my estate to her use, so long as her own remains sufficient for her comfortable support."

"6. And at the marriage or death of my said sister, which ever may first happen, I order and direct my executors to divide all the residue of my estate equally among my nieces and nephews, children of Rynear, William, and Jesse Tyson (my brothers), share and share alike."

Rebecca Roberts died April 5th, 1872, and the surviving executor filed a final account, showing the administration of the trust, and exhibiting a balance of $2401.48 to be distributed to the legatees under the will.

It is as to whom these legatees really are, that the questions presented by the exceptions arise.

It appears that at the death of Mrs. Roberts there were living the children of the brothers Rynear, William and Jesse, and also grandchildren, who are the issue of deceased children. The question of distribution really presented is whether the grand-children should be allowed

to participate, taking the shares their parents, if living, would have been entitled to receive, or whether the living children shall alone be the distributees.

The auditor has reported a distribution which includes the grandchildren as well as the childern; and the exceptions filed attack this conclusion.

The first inquiry which naturally presents itself is whether the bequest over to the children of the brothers of the testatrix passed a vested or contingent interest. If the will gave a vested interest, then all question is at an end, for each child who was living at the death of the testatrix was then clearly a beneficiary, and his subsequent death could not defeat the interest then vested. The determination of this point will, therefore, rule the main question presented by the record.

It is important to ascertain what was bequeathed by the testatrix to the children of her brothers. It was not a sum certain, but the *residue* of a certain sum, which should be left at the death or marriage of her sister. The bequest is, "And at the death or marriage of my said sister, which ever may first happen, *I order and direct* my executors to divide *all the residue* of my estate equally among my nieces and nephews, children, &c." It is said that, inasmuch as the amount of that residue was not determined by the will, but its very existence dependent upon the necessities of the first taker, who might absorb it all, this uncertainty converts the legacy into a contingent bequest. This argument is ingenious, but can be sustained neither by reason nor authority. There is no uncertainty in the subject-matter of the gift. It was the residue at the death of Mrs. Roberts. At her death it would be defined. *Id certum est quod certum est reddi potest.* A bequest of the proceeds of certain stocks to A., which the testator directed should be sold at the expiration of five years and paid to him, or, if he was then deceased, to his heirs or personal representatives, might, upon the same ground, be alleged to be a contingent legacy, for it would be impossible at the testators' death to say what it would be worth at the expiration of the five years, if anything. This position hardly needs authority to sustain it. But if it be required, it will be found in Candler *v.* Dinkle, 4 Watts 143, where this point of the uncertainty of the sum of the legacy directly arose. The cases, so far as this point is concerned, are almost identical. The testator there provided by his will, "I give and bequeath unto C. and to her heirs and assigns all my personal estate whatsoever, and after her death if so much of my personal estate shall be left as will make up three hundred pounds. I give and bequeath to D. and to his heirs and assigns, two-thirds of said sum, and in case a lesser sum than the three hundred pounds, two-thirds thereof; and the last equal third of the said three hundred pounds or less sum, I give and bequeath unto K., and to his heirs and assigns." It was held to be a vested legacy in D. and K., which in the event of their death before C., is transmissable to their per-

sonal representatives. It is said that faces, like cases, differ; but it would be hard to conceive of a stronger family likeness, even where a twin birth had aided to produce similarity then between the case at bar and the one cited. It was earnestly urged that this question is determined by Madison *v.* Andrews, 1 Ves. 57, but there the uncertainty as to the sum arose from the non-execution of a power of appointment; and the distinction between the cases is plainly pointed out by Judge Rodgers, in the opinion delivered in Candler *v.* Dinkle. There is, then, nothing to stamp this as a bequest of a contingent legacy in the uncertainty of the sum. That cannot effect the question if Candler *v.* Dinkle remains unreversed. But it is said that the bequest is contingent because the testatrix meant only to include those children who should be living at the death of Mrs. Roberts. If this be true the legacies would be contingent. The rule in this respect is well stated by Smith on Exec. Int. 281. It is this, where real or personal estate is devised or bequeathed to such children, or to such child, or individuals as shall attain a given age, or the children who shall sustain a certain character, or do a particular act, or be living at a certain time, without any distinct gift to the whole class preceding such restrictive description, so that the uncertain event forms part of the description of the devisee or legatee. The interest so devised is necessarily contingent on account of the person. For, until the age is attained, the character sustained, or the acts performed, the person is unascertained. There is no person assuming the description of the person who is to take as devisee or legatee.

Another principle of construction must also be applied, and that is that the law requires the construction to be made in doubtful cases, in favor of vested in preference to contingent remainders and indefeasable to defeasable estates. Umrath *v.* McCormick 1, P. F. S. 504. Guided by these principles, we will determine whether the testatrix limited her bounty to the children living, at the death of Mrs. Roberts. Is there any where in the clause a limitation to children *then living?* On the contrary, there is a general gift to all as a class, neither preceded nor followed by such a restrictive description. By what authority can we interpolate it. If it be not interpolated, then there is nothing to limit the general nature of the gift to all without limitation or restriction, as to time or person. We are constrained therefore, to declare that the children took a vested interest, at the death of the testatrix.

This conclusion is in harmony with the cases ruled by the court of last resort: *vide* Patterson *v.* Hawthorne, 12 S. & R. 112; Kory *v.* Kory, 1 W. & S. 205; Reed *v.* Buckley, 5 W. & S. 517; Buckley *v.* Reed, 3 Harris 83; Manderson *v.* Lukens, 11 Harris 31; McGills Appeal, 11 P. F. Smith 46; Candler *v.* Dinkle, supra. The only distinction between these cases and that one at law, is that the words, "or their heirs or their equivalents accompanied the bequest over to the legatees." But this dis-

tinctive difference has been declared immaterial. Provenchere's Appeal, 17 P. F. Smith 469, where these words did not occur, and Sharswood, J. says : it is true in the Patterson *v.* Hawthorne, and in all these cases, the bequest over was to the legatees, "or their heirs," and the effect of these words was largely discussed. It might, indeed, be inferred from some parts of the opinions, that those words, controlled the determination as they were construed to mean, 'such persons as would be entitled as their representatives.' I am convinced, however, upon a closer examination, that: if these words had not been employed upon the principles and reason advanced, the result would have been the same. If we strike out these words, these cases are as nearly upon all fours with this one, as they can well be." If this course be adopted with reference to the case of Candler *v.* Dinkle supra, the one rules the other : and their record is positively governed by the decree there. Farther elaboration is unnecessary ; and it would be superfluous to refer to the authorities in which the term "children" has been applied as *nomen generalissimum* to grandchildren, as well as children.

The auditor was therefore clearly right in determing that the legacies were vested.

It is said, however, that he erred in reporting a distribution per capita, instead of per stirpes. But here there was clearly no error. The rule is well settled, that when a testator designates the object of his bequest or demise by their relationship to a living ancestor, such legatees or devisees. take equal shares per capita. Risks Appeal, 2 P. F. S. 271 ; 4 Kents Com. 660, note , Leigh *v.* Norberry, 13 Vesey 340 : McNulledge *v.* Galbraith, 8. S. & R. 46 ; Ulmer *v.* Ebersole, 5 Barr 458 ; Binders appeal, 3 Gr. 212.

The only error committed by the auditor, and that seems to have been caused by a failure of the exceptant in this respect, to acquaint him of two facts, was, in reporting distribution to the children of a deceased child, instead of to the administrator of such decedent. We recommit. the report to him to be reformed in that respect.

. And now, February 1, 1872, the report is recommitted to the auditor, with instructions to distribute the shares of Jesse Tyson to his administratrix Mary Ann Tyson, and the shares of Edmond T. Tyson to Adeline Tyson, his administratrix.